IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRIS SHABAZZ-WIMBERLY,                    2:14-CV-01237-BR

      Plaintiff,                       OPINION AND ORDER

v.

RUSS NICHOLS, Physical Plant
Manager at TRCI; CHARLES NAY,
Physical Plant Employee at
TRCI; A. SMITH, Physical
Plant Employee at TRCI; SUE
WASHBURN, Food Service
Manager at TRCI; GARY HALL,
(Former) Assistant Food
Service Manager at TRCI;
BRIAN MISNER, (Former) Food
Service Coordinator at TRCI;
BRIDGETT WHELAN, Health
Service Manager at TRCI;
CURTIS SYLE, (former)
Correctional Officer at TRCI;
and DAY, Corporal at TRCI,

      Defendants.


CHRIS SHABAZZ-WIMBERLY
#10571327
Deer Ridge Correctional Institution
3920 East Ashwood Road
Madras, OR 97741

      Plaintiff, *Pro Se*

1 - OPINION AND ORDER

**ELLEN ROSENBLUM**
Attorney General
**MICHAEL R. WASHINGTON**
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301
(503) 947-4700

       Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Plaintiff's Motion (#83) for Partial Summary Judgment and Defendants' Cross-Motion (#130) for Summary Judgment. For the reasons that follow, the Court **DENIES** Plaintiff's Motion, **GRANTS** Defendants' Cross-Motion, and **DISMISSES** Plaintiff's remaining claim **with prejudice**.

<u>**BACKGROUND**</u>

      The following facts are taken from Plaintiff's Amended Complaint and the parties' summary-judgment materials and are undisputed unless otherwise noted.

      Plaintiff Chris Shabazz-Wemberly was an inmate at Two Rivers Correctional Institution (TRCI) from May 27, 2010, through October 31, 2014, at which time he was transferred to Deer Ridge Correctional Institution where he remains incarcerated.

      During the relevant period Plaintiff worked in the tortilla room at TRCI and, among other things, used the tortilla machine to make tortillas. According to Plaintiff, the tortilla machine

is shaped like a "giant box" with three windowpanes.  On the inside of the machine are four rotating plates that are heated by a natural-gas line and pilot.  The machine operates at about 400 degrees.  Plaintiff alleges "tortillas routinely fall off the plates and require the operator to open the panes and retrieve the tortillas with a skinny stick.  The windowpanes all have factory installed electrical sensors on them that automatically extinguish the pilot and shuts off the gas valve whenever the windowpanes are opened."[1]  Pl.'s Resp. to Defs.' Cross-Motion for Summary Judgment at 3.

Plaintiff alleges in his Amended Complaint that in "early August, 2012" Defendant Smith, "while working on the tortilla machine's sensors, requested the assistance from [TRCI's] on-site electrician, Defendant [Charles] Nay, as the machine kept turning itself on and off." Am. Compl. at ¶ 22.  The TRCI Job Schedule Report notes "Repair Tortilla machine motor wires" was completed on August 10, 2012, but the Report does not state who completed the repair.  Decl. of Pl., Ex. 1 at 2.  Plaintiff alleges Nay determined the sensor in the back of the machine was malfunctioning, and he "disable[d] the safety mechanism on the tortilla machine by by-passing the automatic extinguishing sensors whenever the panes were opened."  Am. Compl. at ¶ 23-24.

---

[1] Defendants do not dispute this description of the machine or the safety mechanism or that tortillas routinely fall off and must be retrieved.

3 - OPINION AND ORDER

Plaintiff, however, does not allege he was present in early August when Nay allegedly circumvented the safety feature on the tortilla machine.  Defendants dispute Nay worked on the tortilla machine at any point before August 21, 2012, and Nay testifies in his Declaration that August 21, 2012, was the first time he worked on the tortilla machine.  Defendants also dispute anyone circumvented the safety switch on the tortilla machine at any time other than August 21, 2012.

On August 21, 2012, at some point before 8:15 a.m., the tortilla machine began to malfunction.  Plaintiff alleges in his Amended Complaint that when a tortilla fell off one of the plates, Plaintiff opened one of the windowpanes on the machine to retrieve it.  At that time "all of a sudden, the pilot turned itself back on and ignited the leaking gas with plaintiff inside the machine; causing plaintiff severe burns to his hand and arm." Am. Compl. at ¶ 27.

Plaintiff was taken to health services, and at 8:20 a.m. Nurse Marie Roberts examined Plaintiff.  Plaintiff reported to Nurse Roberts that when he was attempting to retrieve a tortilla, the left sleeve of his shirt caught fire and burned his left wrist.  Nurse Roberts noted she did not see any visible blisters on Plaintiff's wrist or arm, but Plaintiff did have an alteration in his skin integrity and light burns.  Decl. of Steven Shelton, Ex. 2 at 5.  Nurse Roberts dressed Plaintiff's left wrist with

Zeroform gauze and Telfa. *Id*. Nurse Roberts consulted with
Registered Nurse Practitioner (RNP) Linda Gruenwald, who directed
Plaintiff to keep the dressing clean and dry and ordered
Plaintiff to take ibuprofen for pain, return to daily sick call
for dressing changes, and to stop working for the rest of the
day. *Id*.

At 10:00 a.m. on August 21, 2012, Defendant Nay reported to
the tortilla room to repair the tortilla machine. The Job
Schedule Report for August 21, 2012, states only that the
tortilla machine was "still not working." As noted, Nay
testifies in his Declaration that August 21, 2012, was the first
time he worked on the tortilla machine. Nay found "the door
safety cut-off switch on the front panel of the machine was not
working. As a result, inmates were reaching into the machine
from the front panel, across the burners to remove the stuck
tortillas." Decl. of Charles Nay at ¶ 6. Nay further testifies:

> I bypassed the safety cut-off switch on the back
> panel of the tortilla machine on August 21, 2012,
> at around 10:00 a.m., which allowed the inmates to
> access the tortilla machine through the back panel
> to clear out clogs and without using the front
> panel, which is the panel closest to the burners.
> I had been told that we would need to order the
> safety cut-off switch. When I disabled the safety
> cut-off switch on the back panel, I told the
> inmates that were waiting to use the machine that
> I had disabled the safety cut-off switch on the
> back panel and would order a new part for the
> front panel.

Nay Decl. at ¶ 9. Nay testifies he reported to Defendant Russell

5 - OPINION AND ORDER

Nichols, Physical Plant Manager, at some point before August 22, 2012, that Nay had disabled the safety cut-off switch. Nichols advised Nay that "we cannot disconnect safety cut-off switches and ordered that the back panel safety cut-off switch be reconnected." Nay Decl. at ¶ 10.

On August 22, 2012, Nay found a new safety cut-off switch for the front panel, replaced the old safety cut-off switch, and reconnected the back panel safety cut-off switch. Nay Decl. at ¶ 10, Ex. 2 at 1.

Also on August 22, 2012, Plaintiff reported to Health Services, and Nurse Cindy Dieter changed his dressing. Nurse Dieter noted Plaintiff's skin and wound were "clean/not progressive." Shelton Decl., Ex. 2 at 1-2. Nurse Dieter also noted there was not any sign of moisture, drainage, infection, or blistering of the affected area.

On August 23, 2012, Plaintiff reported to Health Services. Nurse Catherine Thurmond examined Plaintiff and noted Plaintiff did not have any blisters or "open areas" on his wrist. RNP Gruenwald also examined Plaintiff and directed Plaintiff to leave the dressing off his wrist and "leave [his wrist] to air." Shelton Decl., Ex. 2 at 4.

On August 24, 2012, Plaintiff reported to Health Services and was seen by Nurse Margaret Brown. Nurse Brown noted Plaintiff did not have any break in his skin, but he had some

swelling above his wrist.  Plaintiff complained of pain at his
wrist from the burn.  Nurse Brown prescribed Plaintiff an ice
pack for 24 hours and instructed Plaintiff to apply cold
compresses.  Nurse Brown also advised Plaintiff to return to sick
call on Monday, August 27, 2012, if his wrist was not better.
Plaintiff, however, did not report to sick call again for his
burn.

On August 29, 2012, Defendant Nichols began investigating an
incident report filed by Plaintiff regarding his burn from the
tortilla machine.  In his September 19, 2012, Safety Review
Nichols reported:

> On 8/21/12 at approximately 8:15am Coordinator
> Edison reported to the tortilla room and saw
> Inmate Wimberly standing at the hand washing sink
> with his arm under running water.  Inmate Wimberly
> told Coordinator Edison that his shirt had caught
> on fire while he was reaching into the Tortilla
> machine to get a tortilla unstuck causing a burn
> on his arm.  Coordinator Edison looked at his arm
> and did not see a burn or a burned shirt.  She
> contacted Health Services to inform them she was
> sending Inmate Wimberly to Health Services.

Decl. of Russell Nichols, Ex. 2 at 1.  On August 30, 2012,
Nichols interviewed Plaintiff, who described being burned by the
tortilla machine.  Nichols asked to see Plaintiff's burn, and
Plaintiff showed Nichols the back of his left arm just above his
wrist.  Nichols reported he "could not see any sign of a burn and
the hair in that area of the arm was not affected."  Nichols
Decl., Ex. 2 at 2.  Nichols asked Plaintiff to show him the shirt

7 - OPINION AND ORDER

that was burned, but Plaintiff advised Nichols that he had put it in the laundry and it was not returned to him.  Finally, Nichols asked Plaintiff whether he had been using the protective equipment of heat-resistant gloves, a protective sleeve, and a wooden stick when he attempted to remove the "stuck" tortilla. Plaintiff responded he had used the stick and the protective sleeve, but he "had the protective sleeve pulled up [beyond his wrist] because it did not fit him." *Id*.  Nichols also talked to Defendant Coordinator Brian Misner, who reported the protective equipment was stored in the "immediate area [of the tortilla machine] and readily available for use." *Id*.  Misner also reported Plaintiff had been trained properly in the use of the protective equipment by Inmate Rooney.  Nichols went to the tortilla room and "observed the inmate working the tortilla machine, when a tortilla got stuck he had the protective glove and protective sleeve on and used the provided stick to move the tortilla back onto the cooking plate." *Id*.  Ultimately Nichols concluded although staff had bypassed the shut off switch to the tortilla machine, Plaintiff would not have" suffered an injury if he had "followed his training, the operational directions, and used all the provided protective equipment." *Id*.

On August 1, 2014, Plaintiff filed *pro se* a Complaint in this Court pursuant to 42 U.S.C. § 1983 alleging Defendants violated his right to be free from deliberate indifference under

the Eighth Amendment, his right to due process under the
Fourteenth Amendment, and his right to free speech in violation
of the First Amendment.

On December 15, 2014, Plaintiff filed an Amended Complaint
to substitute Defendants and alleging Defendants violated his
right to be free from deliberate indifference under the Eighth
Amendment, his right to due process under the Fourteenth
Amendment, and his right to free speech in violation of the First
Amendment.

On January 6, 2015, Defendants filed a Motion for Summary
Judgment in which they sought to dismiss Plaintiff's claims for
failure to exhaust administrative remedies.

On January 7, 2015, the Court issued a Summary Judgment
Advice Notice to Plaintiff advising him that if he did not submit
admissible evidence in opposition to Defendants' Motion for
Summary Judgment, summary judgment could be entered against him.

On July 10, 2015, the Court issued an Opinion and Order in
which it granted in part and denied in part Defendants' Motion.
Specifically, the Court concluded Plaintiff failed to exhaust his
administrative remedies as to (1) that portion of his First Claim
in which he alleged Defendants violated his right under the
Eighth Amendment to be free from deliberate indifference when
they failed to post any sign or to hold any training sessions
with inmates advising them of the risk of operating the tortilla

9 - OPINION AND ORDER

machine after circumventing the safety switch and refusing to keep the doors ajar to the room containing the tortilla machine so that he gas fumes could dissipate; (2) his Second Claim in which he alleged Defendants violated his right to due process under the Fourteenth Amendment when Defendant Gary Hall provided false and misleading statements to Risk Management Inmate Injury Fund Claims regarding Plaintiff's August 21, 2012, injury and when Defendant Bridgett Whelan made false declarations to SAIF Corporation regarding Plaintiff's August 21, 2012, injury; and (3) his Third Claim in which he alleged Defendants violated his First Amendment rights when they retaliated against him for submitting various grievances.  The Court dismissed those claims without prejudice and noted this matter would proceed only as to that portion of Plaintiff's First Claim in which he alleged Defendants violated his right under the Eighth Amendment to be free from deliberate indifference when they circumvented the safety switch on the tortilla machine that Plaintiff operated.

On July 28, 2015, Plaintiff filed a Motion for Partial Summary Judgment "on the liability of the plaintiff of his claim[] against the listed Defendants."

On January 20, 2016, Defendants filed a Cross-Motion for Summary Judgment in which they seek summary judgment on Plaintiff's remaining claim.

On January 22, 2016, the Court issued a second Summary

Judgment Advice Notice to Plaintiff advising him that if he did not submit admissible evidence in opposition to Defendants' Cross-Motion for Summary Judgment, summary judgment could be entered against him.

The Court took the parties' Motions under advisement on July 7, 2016.

## **STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

Defendants move for summary judgment on Plaintiff's remaining claim on the grounds that (1) Plaintiff has failed to allege personal involvement by Defendants Nichols, Hall, Misner, Washburn, Whelan, Syle and Day; (2) Plaintiff's claim fails to satisfy the physical-injury requirement of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e); (3) Plaintiff has not established Defendants violated the Eighth Amendment; and (4) Defendants are entitled to qualified immunity.

## I.   Personal Involvement

As noted, Defendants move for summary judgment on Plaintiff's claim against Defendants Nichols, Hall, Misner, Washburn, Whelan, Syle, and Day on the ground that Plaintiff has failed to establish these Defendants personally participated in the conduct underlying Plaintiff's claims.

The Ninth Circuit has made clear that "'[l]iability under § 1983 must be based on the personal involvement of the defendant.  There is no *respondeat superior* liability under section 1983.'"  *Shallowhorn*, 572 F. App'x at 546 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

### A.   Defendants Nichols, Washburn, Whelan, Syle, and Day

Plaintiff does not allege or establish any facts that indicate Nichols, Washburn, Whelan, Syle, or Day personally participated in the events pertinent to Plaintiff's remaining

13 - OPINION AND ORDER

claim relating to circumvention of the safety switch on the tortilla machine on August 21, 2012, when Plaintiff was injured.

Accordingly, the Court grants Defendants' Cross-Motion for Summary Judgment as to Plaintiff's claim against Nichols, Washburn, Whelan, Syle, and Day and denies Plaintiff's Motion for Partial Summary Judgment as to these Defendants.

**B.    Defendants Hall and Misner**

Plaintiff alleges Defendant Misner "failed to . . . train plaintiff before or after the tortilla machine had been altered by Defendants Nay and Smith; but rather delegated training to another prisoner." Am. Compl. at ¶ 79. Plaintiff does not allege or establish any facts that indicate Defendant Misner personally participated in the decision to circumvent the safety switch on August 21, 2012. In addition, Plaintiff concedes he was trained in use of the tortilla machine. Similarly, Plaintiff alleges Defendants Nay and Smith "informed Defendant Hall that the safety feature had been disabled [on the tortilla machine]. Defendant Hall then failed to post any signs indicating that the machines safety feature had been disabled nor held training sessions on operating the altered equipment." Am. Compl. at ¶ 26. Plaintiff does not allege or establish any facts that indicate Defendant Hall personally participated in the decision to circumvent the safety switch on August 21, 2012. In addition, the record indicates Defendant Nay circumvented the

14 - OPINION AND ORDER

safety switch on August 21, 2012, at 10:00, which was after Plaintiff was injured and more than an hour after he received medical treatment.  Hall's alleged failure to post signs or hold training sessions on operation of the tortilla machine, therefore, did not cause Plaintiff's injury.

Accordingly, the Court grants Defendants' Cross-Motion for Summary Judgment as to Plaintiff's claim against Hall and Misner and denies Plaintiff's Motion for Partial Summary Judgment as to these Defendants.

## II.  Physical-Injury Requirement of the PLRA

Defendants move for summary judgment on the ground that Plaintiff's alleged injury fails to meet the physical-injury requirement of the PLRA, which provides in pertinent part:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The Ninth Circuit has interpreted the "physical-injury" requirement of § 1997e(e) to require a showing of more than a *de minimis* harm.  *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).  In reaching that conclusion the Ninth Circuit relied on cases from the Fifth and Eleventh Circuits in which those courts held inmates' claims regarding an ear that remained bruised and sore for three days and making an inmate "dry shave" were insufficient to satisfy the

physical-injury requirement of § 1997e(e).  *Oliver*, 289 F.3d 626-27 (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997), and *Harris v. Garner*, 197 F.3d 1059 (11th Cir. 1999)).  Ultimately the Ninth Circuit concluded the plaintiff in *Oliver* had not established he suffered more than *de minimis* harm when he alleged he suffered back and leg pain that was "nothing too serious" and a canker sore.  289 F.3d at 629.

As noted, Defendants assert Plaintiff did not suffer more than *de minimis* injury when he was burned by the tortilla machine.  Defendants point to the fact that medical staff did not observe any blistering, infection, drainage, or moisture on Plaintiff's wrist and saw only "an alternation in skin integrity and light burns."  In addition, Plaintiff was treated with bandages, ice, and ibuprofen for two days.  On the second day after Plaintiff was burned, medical staff instructed Plaintiff to leave the dressing off because there was no sign of blisters or any open areas.  Plaintiff did not return for medical attention for his wrist after three days.  The Court agrees the injury suffered by Plaintiff is the kind that courts have held is not more than *de minimis*.  *See, e.g., Corsetti v. Tessmer,* 41 F. App'x 753, 755 (6th Cir. 2002)(the plaintiff's allegations of two small bruises and minor cuts were *de minimis* injuries that did not satisfy § 1997e(e)); *Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010)(the plaintiff's allegations of "vague injuries

16 - OPINION AND ORDER

to his back, the scrapes and marks on his knees and legs, the lack of personal items, the lapse of time in reordering medication, the window-cleaning assignment, and the discontinuance of his pass for showers twice a day" constituted *de minimis* physical injuries that did not satisfy § 1997e(e)); *Luong v. Hatt*, 979 F. Supp. 481 (N.D. Tex. 1997)(cuts and scratches that lasted for two or three days were insufficient to satisfy the physical-injury requirement of § 1997e(e)); *Harbridge v. Schwarzenegger*, No. CV 07-4486- GW(SH), 2011 WL 6960830, at *13 (C.D. Cal. Aug. 31, 2011)(the plaintiff failed to meet the physical-injury requirement of § 1997e(e) when he alleged "sleep deprivation affecting his emotional and mental state, a runny nose, sore throat, headaches, stinging eyes, painful teeth and gums, nausea, and difficulty eating" during 12 days of disciplinary segregation).  The Court, therefore, concludes Plaintiff fails to establish his injuries satisfy the personal-injury requirement of § 1997e(e).

The Court, however, does not agree with Defendant that Plaintiff's failure to establish that his injuries satisfy the personal-injury requirement of § 1997e(e) requires the Court to grant summary judgment in favor of Defendants on all of Plaintiff's remaining claim.  The Ninth Circuit made clear in *Oliver* that failure to meet the physical-injury requirement of § 1997e(e) results in dismissal only of a plaintiff's claims for

17 - OPINION AND ORDER

mental and emotional injury.  Thus, "[t]o the extent [a
plaintiff] has actionable claims for compensatory, nominal or
punitive damages — premised on violations of his [constitutional]
rights, and not on any alleged mental or emotional injuries . . .
[those] claims are not barred by § 1997e(e)."  289 F.3d at 630.

In his prayer for relief Plaintiff requests the Court to
"[o]rder Defendants to pay compensation and punitive damages to
plaintiff."  Am. Compl. at 15.  Plaintiff, therefore, appears to
request compensatory and punitive damages related to his
remaining claim.  Accordingly, to the extent that his requests
for compensatory and punitive damages are premised on the alleged
Eighth Amendment violation rather than the emotional or mental
distress suffered as a result of that violation, that claim is
not barred by § 1997e(e).

The Court, therefore, grants Defendants' Cross-Motion for
Summary Judgment as to that part of Plaintiff's claim for damages
based on emotional or mental distress suffered by Plaintiff as a
result of Defendants' alleged Eighth Amendment violation and
denies Plaintiff's Motion for Partial Summary Judgment as to any
such claim.

**III. Eighth Amendment Violation**

As noted, Plaintiff alleges Defendants violated his right to
be free from deliberate indifference under the Eighth Amendment
when they circumvented the safety switch on the tortilla machine

18 - OPINION AND ORDER

because they failed to protect him from a known, dangerous condition.

Defendants move for summary judgment on the grounds that Plaintiff has failed to establish Defendants' actions caused Plaintiff's injury, and even if they did cause Plaintiff's injury, Defendants responded reasonably to the removal of the safety switch.

**A.    Standards**

"The [United States] Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and . . . the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quotations omitted).  Under the Eighth Amendment "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014).  *See also Farmer*, 511 U.S. at 847 (a prison official violates the Eighth Amendment when he knows about a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm).  "Deliberate indifference occurs when '[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008)(quoting

19 – OPINION AND ORDER

*Farmer*, 511 U.S. at 841).   Thus, a prisoner may establish a claim "under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

To determine whether a plaintiff has established deliberate indifference the court must engage in a two-part inquiry. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show . . . the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." *Id*. (quoting *Farmer*, 511 U.S. at 837).   "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." *Id*. (citation omitted).   "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Id*. (citing *Farmer*, 511 U.S. at 844. The Supreme Court made clear in *Farmer* that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably."

**B.  Plaintiff has failed to establish that Defendants caused his injury.**

As noted, Defendants move for summary judgment on the ground that Plaintiff has failed to establish that Defendants caused his injury.   Specifically, Defendants point to the fact that the record reflects Plaintiff was injured at some point

before 8:20 a.m. on August 21, 2012, because he reported to Health Services and was seen by Nurse Roberts at 8:20 a.m. for the burn that he received from the tortilla machine.  Defendant Nay testifies in his Declaration that he did not arrive at the tortilla room until 10:00 a.m. on August 21, 2012, and did not disable the safety switch until some point after 10:00 a.m. Plaintiff does not point to any evidence in the record to rebut the conclusion that Plaintiff was injured before Defendants circumvented the safety switch.

Moreover, to the extent that Plaintiff alleges Defendants circumvented the safety switch in early August or at any time before August 21, 2012, Plaintiff's allegation is not supported by the record.  Plaintiff does not allege or state in his Declaration that he was present in the tortilla room in "early August" when Defendant Nay allegedly worked on the tortilla machine and circumvented the safety switch.  In addition, Defendant Nay testifies in his Declaration that he worked on the tortilla machine for the first time on August 21, 2012.

In summary, the record does not reflect Defendants circumvented the safety switch before August 21, 2012.  The Court, therefore, concludes the record does not support Plaintiff's claim that his injury was caused by Defendants' circumvention of the safety switch on the tortilla maker because Defendant Nay did not do so until almost two hours after

21 - OPINION AND ORDER

Plaintiff reported to Health Services with his burn from the tortilla maker on August 21, 2012.

**C.  Defendants responded reasonably to the risk to inmate safety from the tortilla maker.**

Even if the record supported Plaintiff's allegation that he was injured after Defendant Nay circumvented the safety switch, Defendants assert Plaintiff's Eighth Amendment claim fails because they responded reasonably to the risk to inmate safety from the tortilla maker.  Specifically, the record reflects inmates working in the tortilla room, including Plaintiff, had heat-resistant gloves in addition to protective sleeves and a 14-inch stick immediately available to retrieve tortillas that fell off the plates in the tortilla maker.  The record also reflects Plaintiff was trained in how and when to use the protective gear to retrieve tortillas.  Moreover, Nichols testified in his Declaration that when he went to the tortilla room, he saw other inmates using the protective gear and stick to retrieve tortillas safely.  Finally, Defendant Nay replaced the safety switch with a new, working switch only one day after Nay bypassed the safety switch.

On this record the Court concludes to the extent that Defendants circumvented the safety switch on the tortilla maker and thereby created a substantial risk to inmate safety, Defendants also responded reasonably to that risk.

Accordingly, the Court grants Defendants' Cross-Motion

22 - OPINION AND ORDER

for Summary Judgment and denies Plaintiff's Motion for Partial

Summary Judgment.


<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Plaintiff's Motion (#83)

for Partial Summary Judgment, **GRANTS** Defendants' Cross-Motion

(#130) for Summary Judgment, and **DISMISSES** Plaintiff's remaining

claim **with prejudice.**

IT IS SO ORDERED.

DATED this 9th day of August, 2016.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


23 - OPINION AND ORDER